He was great. He was good. You're both good. Of course, you just got one case. Okay, Ms. Gilbrow. Good morning. May it please the Court, my name is Amy Gilbrow and I represent the appellant, Barbara Peterson. This is a social security case, and Ms. Peterson alleges disability beginning June 21, 1991, due to symptoms she has experienced since that time. In this case, we're requesting that the Court reverse and remand this case for payment of benefits beginning June 21, 1991, due to the errors in the administrative law judge's decision. In order to reach that remedy, I think the Court would have to credit Dr. Wambaugh's opinion. Dr. Wambaugh is Ms. Peterson's treating neurologist, and in 1999, he offered an opinion that Ms. Peterson has had multiple sclerosis since her alleged onset date. The difficulty with relying on that, it seems to me, is that the fact that she had symptoms, or had it, was not the only reason. Before the onset date doesn't mean that she was disabled on that account before the onset date. That's true. She alleges, though, that she had symptoms that were disabling. So what we're asking the Court to do is find that she had multiple sclerosis. That's all we're asking you to do with Dr. Wambaugh's opinion. A step that the administrative law judge was not willing to take. He found she had possible multiple sclerosis. Should we do that, or should we remand the ALJ to make the decision one way or another, as opposed to possibly had it? It's up to you. Literally, the Court has been given discretion in determining whether to credit Dr. Wambaugh's opinion in the case law. Our argument is that the administrative law judge did not provide sufficient reasons for rejecting Dr. Wambaugh's opinion that Mrs. Peterson had MS, and the case law allows you to credit her. He rejected it, or did he accept it, or he just never? He never really ruled on it. He just said possibly. Well, he said he rejected it. In his decision, he said that he rejected Dr. Wambaugh's opinion because it was a retrospective diagnosis and cited Flayton, the Secretary of Health and Human Services, which doesn't really stand for that proposition as indicated in our brief. But he did say he rejected Dr. Wambaugh's opinion and then concluded that Mrs. Peterson only had possible multiple sclerosis. So what we're asking the Court to do is consistent with case law and at your discretion to credit Dr. Wambaugh's opinion and at least find that the symptoms she was experiencing were due to multiple sclerosis. Then the next step is to consider Mrs. Peterson's testimony regarding the limitations she had due to her symptoms. And in this case, the administrative law judge actually found that Mrs. Peterson was credible. He said that in his decision. He said, I found her to be a credible witness. But he said, I thought that she was testifying in the present tense. In other words, he thought she was testifying about symptoms that she had during the later period, during the time of the hearing. However, when you look at Mrs. Peterson's testimony, when you review her testimony at the hearing, she was not testifying in the present tense. She was specifically talking about limitations that she had when she stopped working for the dry cleaners in 1990 and 1991. So in order to reverse this case and remand for payment of benefits, you would have to credit Dr. Wambaugh's opinion, the diagnosis of multiple sclerosis. He never, he actually, I don't think his opinion stands for the fact that she was, he never said she was disabled by MS prior to 1993. Mrs. Peterson testified that she was disabled. And you can credit that testimony. The administrative law judge actually found she was a credible witness. If you determine not to remand this case and reverse for payment of benefits, there are other standalone issues aside from the possible multiple sclerosis and the issues that we've just discussed that would also warrant remand for further proceedings. And those include the ALJ's treatment of Ralph Peterson's testimony. Mrs. Peterson's husband testified that she was having difficulty standing and walking prior to her date last insured. But the administrative law judge found in his decision that she could perform work that required her to stand and walk six days, up to six hours a day. Also, the administrative law judge didn't consider the diagnosis of, or the presence of obesity in this case, which I think would also impact Mrs. Peterson's ability to stand and walk. And finally, the administrative law judge found that Mrs. Peterson had degenerative joint disease in her knee, but again found that she could stand and walk six hours a day. So even if you find that the ALJ acted properly in not finding that she had a diagnosis of multiple sclerosis prior to her date last insured, there are other issues in its decision which require it. Kagan. What exactly is the significance of the multiple sclerosis diagnosis? I mean, he did recognize that she had impairments, impairments severe enough to get by Step 2, right?  Whether they were multiple sclerosis or something else.  And so what's the exact difference, does it make, whether she had multiple sclerosis or didn't? In order to find that Mrs. Peterson is disabled based on the symptoms that she was alleging, those symptoms can't really be linked to the other diagnosis he found. I see. Maybe to the seizure disorder, but she testified she didn't have seizures. So things like her difficulty walking and her... Dizziness, fatigue. Those were in particular... The MS would explain that, but it wouldn't explain, but nothing else that he found would have explained it. Right. If there's no MS, those symptoms that she's reported, you have to, she has to establish that she has a medically determinable impairment which could reasonably expect it to cause those symptoms that she's alleging. Well, does that mean that there's another gap in the findings, which, again, ARC is in favor of her amendment, which is when he makes a finding, whether he finds or we find that she did have MS, there's still, somebody has to find whether that was the cause of her symptoms. Well, Dr. Wambaugh actually said in his opinion that the symptoms that she was experiencing MS, and Dr. Aigner, the medical expert, also testified that those symptoms, those specific symptoms that I've just addressed that she was experiencing were probably due to MS. So I don't, I think that link is made in the evidence already. That still has the same problem, because there's nothing to show that those symptoms were disabling at that time. Well, I think you have to, again, I think you have to look at Mrs. Peterson's testimony and her testimony. I'm not so sure that the ALJ adequately explained why he, in effect, disregarded both her and her husband's testimony. That's kind of a different issue. I think that's right. I think you're right that he didn't adequately explain that. And the case law says if the administrative law judge does not adequately address their testimony, doesn't explain, then the court may not. All right. So if that's, if that were a basis for remand, then, and if, at least I don't see how you can, on this record, say that there was disability before the onset date, then where does that leave, leave you on remand? If you find that Mrs. Peterson's testimony doesn't support disability, then I think you should remand for further proceedings. That's what I'm saying. If, if, if, if I thought that the ALJ didn't adequately explain why he disregarded her and her husband's testimony, but if I also think that Dr., none of the doctors said that she was disabled on account of MS before the onset date, where does that leave you on remand? I think you still need to remand for consideration of the, I'm sorry, remand versus pay? I apologize. No. No, no, no. Where does that leave you on remand? What do you now do on remand, if my view prevails? Obtain further testimony. Where does it leave you substantively? As I understand it, if the question is, if we have a combination, suppose what we ended up with was a determination that the, she did have MS, but there was no medical testimony as to her disability at that point, but she and her husband's testimony would be enough to establish disability. Is that enough? Well, that's not my question. If you're trying to rephrase my question, that isn't it. So let me try again. If there is no medical opinion that she was disabled on account of MS prior to the onset date, but if the ALJ inadequately explained why he disregarded Peterson and her husband's testimony, and we remand on that basis, what then do you do on remand? Or what does the ALJ do? What happens? He has a new hearing, and he makes a determination regarding their testimony. Okay. Thank you. That answers that question. Thank you. Now, I have another question. Okay. Well, I'll let you save your time. I'll ask it of the government. Thank you. Ms. Edwards? Good morning. May it please the Court, Jamala Edwards, representing the Commissioner. Today we have a case here where no matter what we may feel about the condition of Ms. Peterson at this time, at the time of her date last insured, she did not have her impairments did not rise to the level of disability. The medical evidence does not show that. Her testimony is to that effect, but that's all we have is her testimony. So as a substantive matter, if we had – let's assume we cleared up the MS, so that we knew she had MS at the time, and we had her testimony and her husband's testimony, which has been discredited, but suppose it was now credited in terms of pertaining to the appropriate period. Why aren't those two things together sufficient to show that she had – both of which would probably have to be done in remand. But if those two things existed, why wouldn't they be sufficient to show that she had – was disabled due to MS at the appropriate time? Well, how would we assume that her MS was disabling? Well, she testified to her actual functional condition at the time, as did her husband. Right. Right. And you seem to say – start out by saying that if you believe that, she would – she did testify to being disabled. That's only her testimony. However, the objective medical evidence during that time period shows that she did. So that's why I'm asking, what is the law about whether or not, if you have a medical condition that could cause a certain disabling condition, and you have testimony that you have – that you are, in fact, functionally disabled, but not medical testimony. So those two pieces together add up to be sufficient to establish disability. Mere testimony without diagnostic signs, laboratory findings. Excuse me. I'm assuming diagnostic signs. I'm assuming that she did have – that it is now determined that she did have MS at that time. So based on her testimony alone, would that be enough to find disability? Based on the doctor's testimony that she had MS at the time. We do have a doctor saying she had MS at the time, if it were credited, and if she were credited as to her functional situation at the time. Would – are those two pieces enough under the law to add up to a disability at the time? Yes. If the doctor was credited and the subjective testimony was credited. All right. So now what we have is a situation where both – in the first instance we don't have a – we have a possible determination. In the second instance we have a situation where you agree that the IHA – the IHA was wrong as to the husband, and there's also an issue as to her. So if we – don't we have to remand her to get this all straightened out? Well, we argue that the subjective testimony, the treatment of that was harmless error at most, that that wouldn't change the ultimate decision that this claimant was not disabled. Why? Because at the time the objective evidence did not show. It was a very equivocal finding on the doctor. Maybe possible – It wasn't equivocal at all. Her treating doctor said quite definitively that she had MS in 1991. Well, it was a – Retrospectively. It was a retrospective – Right. Right. But when you look at his – that same doctor's diagnostic notes, the medical evidence as a whole, at that time it failed to establish that – Well, what he's really saying is, you know, we just didn't see it, but now in retrospect I can – I now understand what was going on then. Don't doctors do that? Doesn't it make – it certainly looks that way to even a layperson. Right. Somebody turns out to have MS a couple years later, which is completely consistent with the symptoms she was exhibiting earlier. And there were some signs at the time that were – I mean, objective signs like these reflexes and stuff that are – just nobody put two and two together then. And later on they did. Well, that was seven years later. That's quite a bit of time later. And two years later – It was seven years. I thought it was nine. Nineteen ninety – or 1999, excuse me, eight years later when the new diagnosis came in from Dr. Wambaugh. Dr. Wambaugh. Well, 1991 is when he – his original treatment notes were from. Let me ask a different question. Sure. The ALJ, as I read it, did not factor in obesity at Step 5. The district court probably correctly said that the medical evidence didn't support a limitation of function on that account, but the ALJ didn't say so. Right. And, of course, we had to review what the ALJ said. So does that afford a basis for remand or not? Well, it's at the discretion of the court, of course. But the ME spoke to obesity at the hearing and said, well, she might have had a fair amount of problems, but it wasn't a significant limitation on its own. And then when you look to the Yes, obesity can affect the knee impairments and the – I think she had a pulmonary impairment of some sort, too. But the medical evidence at the time, prior to her date last insured, just did not show that she had significant limitations of any kind, even with the MS. She had symptoms that she felt kind of a veil in front of her face, some dizziness, unsteadiness. But these symptoms did not rise to the time that that was her date of onset. Perhaps it could have been a step two, finding a severe impairment. But even then, there's no significant limitations that show from any of these, obesity, pulmonary, knee impairment, at that time that she was suffering. And then there was even a period of time where she didn't seek treatment at all before she resumed treatment again. So, yes, it is and is perhaps an error that the ALJ did not address that. But we would argue that it's not an error which would overturn the final decision in this case. Now, as far as the credibility goes, we argue that it's not only the present tense explanation that the plaintiff gave. It was the other evidence as well. The plaintiff gave no evidence of treatment, no evidence of limitations altogether to discount the plaintiff's credibility, her subjective limitations. Why is he allowed to use them? Sorry. He's allowed to use objective evidence, the space of treatment. Maybe he was drafted, but didn't. I'm sorry. Well, throughout the discussion, throughout, I mean, it is implied throughout the decision that he looked at the case as a whole and not solely at Didn't he find her credible? Except he thought she was testifying about a different time period. Correct. So he didn't discount her credibility on any basis but an erroneous one. Well, he found her credible for terms of now that she did, in fact, have a disabling impairment now, but not prior to her date last insured. Okay. If there are no other questions, thank you. Okay. Thank you. Thank you, Ms. Gilbreath. Do you have a remaining question for me, Judge Reimer? All I would say is why would you send this case back for further proceedings if you find that the errors have been made? There was an original application in this case in 1991. Even the administrative law judge found there was no question at the time he wrote his decision that she's disabled at this time. Her testimony is credible. Thank you very much. All right. Thank you, counsel. The matter to start will be submitted.
judges: Alarcon, Rymer, Berzon